

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 17, 2020

**BY CM/ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

     Re:    *United States v. Davonte Brown*, S2 20 Cr. 135 (JMF)

Dear Judge Furman:

     The Government writes to respectfully request that the Court revoke Defendant Davonte Brown's bail and order the defendant's detention pending trial under the factors set forth in Title 18, United States Code, Section 3142(g). As further discussed below, the Government has obtained new evidence during its investigation that has a material bearing on the danger that the defendant poses to the community and the defendant's risk of flight—specifically, evidence of the defendant's possession of a firearm and sale of drugs in the days leading up to his arrest on March 19, 2020 and his intention to flee from law enforcement after learning of the federal charges against him. As a result, the Government respectfully submits that the defendant must be detained because there is no condition or combination of conditions that can reasonably assure the safety of the community or the defendant's appearance in Court.

### I.    Factual and Procedural Background

     The defendant is charged with participating in the Black Stone Gorilla Gang ("BSGG"), a violent Bloods street gang that has been operating in the New York City metropolitan area and the jails and prisons of New York State since at least 2011. At trial, the Government will prove that BSGG members have been responsible for numerous acts of violence, including at least two murders, six attempted murders, five slashings, three armed robberies, and dozens of physical assaults. Former BSGG members will testify at trial that violence is firmly rooted into BSGG's culture. BSGG members committed acts of violence to join the gang and move up in status within the gang. BSGG members also committed acts of violence against each other as a form of discipline for violating the rules of the gang. The violent nature of BSGG is underscored by the fact that the Government seized six guns in connection with the arrests in this case, including a gun from the defendant on March 19, 2020 (in addition to three guns from co-defendant Michael Delaguila, one gun from co-defendant Jacobb Padin, and one gun during the arrest of co-defendant Jerry Rojas).

BSGG members also committed serious crimes to make money.  Members of BSGG sold massive quantities of crack cocaine, powder cocaine, heroin, and other dangerous drugs in New York City and locations outside of New York City.  They used and carried guns in support of the gang's drug operations.  Members of the gang also made thousands of dollars by defrauding financial institutions, depositing stolen and counterfeit checks into bank accounts controlled by members of the scheme.  BSGG members were required to pay "kitty dues"—a form of tribute—to higher-ranking members of the gang and BSGG members who were in prison.

The S2 20 Cr. 135 Indictment charges 15 members and associates of the Black Stone Gorilla Gang with a variety of criminal offenses.  The defendant is charged with participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d) (Count One); and participating in a narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), (b)(1)(C), and (b)(1)(D) (Count Ten).

### A.  Defendant's Arrest and Initial Presentment

On March 18, 2020, law enforcement agents unsuccessfully attempted to arrest the defendant at his last-known residence in the Bronx.  On the evening of March 19, 2020, law enforcement officers with the New York City Police Department ("NYPD") conducted a traffic stop of a vehicle double-parked near a fire hydrant in the vicinity of East 180th Street and Mapes Avenue in the Bronx.  There were four people inside the vehicle, including the defendant.  Law enforcement officers observed in the vehicle, among other things, an open container of alcohol and a defaced Taurus .380 caliber PT 738 TCP semi-automatic pistol with a high-capacity magazine loaded with five cartridges (the "Seized Gun").  As a result, all four individuals were placed under arrest.  During a subsequent search, one of the other individuals in the car was also found in possession of marijuana.  A photograph of the gun and high-capacity magazine recovered by law enforcement is below:



On March 20, 2020, the defendant was brought to the Southern District of New York and presented before Magistrate Judge Gorenstein. The Government sought pretrial detention for the defendant, arguing that there were no conditions that could reasonably assure the safety of the community or the defendant's appearance in Court. Among other things, the Government argued that the defendant had been arrested in a car the previous night where a loaded gun was found. The defendant denied knowledge or possession of the gun, arguing that there were other individuals in the car when the gun was recovered. Following the hearing, Magistrate Judge Gorenstein ordered the defendant released to home incarceration and other standard bail conditions, including a personal recognizance bond cosigned by one financially responsible person and two other cosigners for moral suasion.[1] Following the detention hearing, the Government did not appeal Magistrate Judge Gorenstein's decision to the Part I judge. The defendant was released on April 9, 2020.

### B. Subsequent Search of the Defendant's Cellphone

Following the detention hearing, law enforcement officers searched the defendant's cellphone pursuant to a court-authorized search warrant. During this search, law enforcement officers observed, among other things, photographs of a gun matching the appearance of the Seized Gun, photographs of large quantities of marijuana—including a photograph of the defendant holding up a large quantity of marijuana—and photographs of a second gun sitting next to marijuana and rolling paper used to create marijuana cigarettes, as shown below:

 

---

[1] Judge Gorenstein initially ordered that the bond be cosigned by two financially responsible persons. After the defendant was unsuccessful in meeting this condition, the parties consented to a modification of the bond to instead require one financially responsible cosigner and two additional cosigners for moral suasion. (Docket No. 73).




Additionally, law enforcement officers also have recovered text messages between the defendant and another individual on March 18, 2020—the date when the indictment was unsealed and most of the defendants were arrested—at approximately 5:53 p.m. EST indicating his awareness of the federal charges against him and his intention to flee:

**CC-1:** Yeah just be easy if anything goes wrong I'm about to get a 5 bedroom house this month tell [first name of defendant's girlfriend and one of his bond cosigners] slide out this way if she need some support to stay w us shits different. Now we gonna have mad room

**Defendant:** Kool thanks appreciate it I gotta lay low I'm lost bro

**Defendant:** N I hate to put this weight on her

**Defendant:** [sad face emoticon]

**Defendant:** Ima try n hold it down till next month just lmk ima come out there

**CC-1:** We gonna have mad room everybody just gotta hold there weight and work that's all

**Defendant:** Ima be on the run lmaoooo

Other text messages sent and received by the defendant indicate his awareness of the unsealing of the indictment and the arrests of his co-defendants on March 18, 2020.

## II.  Applicable Law

Generally speaking, a defendant must be detained pending trial if the Government can show by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A defendant must be detained if no condition or combination of conditions can "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In making this determination, the Court must consider: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence…or involves…a…firearm;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C § 3142(g).

In this case, however, the Bail Reform Act provides for a rebuttable presumption in favor of detention because the defendant is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A). Even when a defendant "has met his burden of production" to rebut the presumption favoring detention, that presumption "does not disappear entirely, but remains a factor to be considered

among those weighed by the district court." *United States* v. *Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (reversing bail and denying release of defendants involved in conspiracy to commit a single armed drug robbery, which never came to fruition).

Relevant here, a previously held detention hearing may also be re-opened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

### III. <u>Analysis</u>

Since the detention hearing on March 19, 2020, the Government has obtained significant evidence about the defendant's involvement in criminal activity leading up to the date of his arrest. Based on a search of the defendant's cellphone, the Government has found compelling evidence that the loaded and defaced gun with a high-capacity magazine seized by law enforcement on March 19, 2020 was illegally possessed by the defendant—a convicted felon. The Government also found evidence of the defendant's possession of large quantities of marijuana, drug trafficking paraphernalia like scales and glassine envelopes, and a second gun that has not been recovered by law enforcement. Finally, the Government found evidence of the defendant's intention to flee and avoid law enforcement detection for as long as possible after learning of the federal charges against him. As further described below, this newly obtained evidence—combined with the other evidence in the record—overwhelmingly demonstrates that the defendant should be detained. Put simply, there is no set of conditions that can reasonably assure the safety of the community or the defendant's appearance in Court, especially in light of the statutory presumption in favor of detention that applies here.

At trial, the Government will prove that the defendant has been an active BSGG member since at least 2014. The defendant sold drugs with other BSGG members, including in Maryland. At trial, the Government will also present evidence that the defendant was one of the triggermen during a shoot-out with rival gang members in November 2015. This shooting took place on a public street in a residential neighborhood, just steps away from St. Barnabas Hospital in the Bronx. During the shooting, an innocent bystander was grazed in the head with a bullet, which required multiple staples to close the wound. The danger and terror caused to the community by the defendant's participation in this shooting—just months after he was released from a 12-month term of imprisonment in Maryland—cannot be overstated.

Following this shooting, the defendant was arrested on two occasions relating to gun possession in October 2016 and June 2018. In October 2016, the defendant walked into a police precinct and claimed ownership of a gun that had been recovered from another BSGG member. The defendant was not prosecuted because there was insufficient corroboration to show the defendant's ownership of the gun. In June 2018, a civilian witness observed the defendant throw a gun underneath a car during a dispute between two groups of people. A grand jury declined to indict the defendant after he testified before the grand jury. Relevant here, the defendant admitted in his post-arrest statement with law enforcement on March 19, 2020 that he did in fact possess the gun in June 2018 but "beat" the case by testifying in the grand jury. In other words, the

defendant admitted that he illegally possessed a gun in June 2018 but avoided prosecution by likely committing perjury before the grand jury.  Finally, the evidence from the defendant's cellphone demonstrates that the defendant has continued to engage in criminal activity leading up to the moment of his arrest—possessing a loaded gun with a defaced serial number and selling marijuana.  The photographs of the second gun with marijuana also include the caption: "My life like a movie ima let you be the director [emoticon of arm] just dont flip the script."  The Government expects that witnesses at trial will testify that messages like this are frequently disseminated by drug dealers to indicate that they are armed with guns, deterring other individuals from attempting to rob them of their drugs or drug proceeds.

The defendant's criminal conduct is even more concerning when viewed in light of his criminal history.  On August 26, 2014, the defendant was arrested in Maryland and charged with theft and false statements to law enforcement.  *Four days later*, the defendant was arrested in Maryland on August 30, 2014 after being found in possession of crack cocaine, a digital scale, and plastic sandwich bags.  During a subsequent strip search by law enforcement, the defendant stuck his hand in his underwear, pulled out a bag containing approximately 3.2 grams of crack cocaine, and attempted to place the drugs in his mouth.  A struggle with law enforcement officers ensued, and the defendant proceeded to bite a law enforcement officer's finger and spit blood onto another law enforcement officer.  The defendant ultimately pleaded guilty to Possession with Intent to Distribute Narcotics and Assault in the Second Degree on a Department of Corrections Employee and was sentenced to one year of imprisonment.  Following this felony conviction and lengthy term of imprisonment, however, the defendant did not cease committing crimes.  Rather, the defendant committed a shooting in November 2015, and then possessed guns in October 2016, June 2018, and on the night of his arrest on March 19, 2020.  The evidence also indicates that the defendant likely possessed another gun that was not recovered by law enforcement, which he used for protection while he was selling marijuana.  The defendant's repeated participation in criminal activity from 2014 until the present and his track record of making false statements to the authorities demonstrate that there is no set of conditions that can reasonably assure the safety of the community.  Put simply, the defendant cannot be trusted to obey the conditions of bail, including the requirement that he not possess a firearm or otherwise commit additional crimes.  *See United States v. Millan*, 4 F.3d 1039, 1049 (2d Cir. 1993) (explaining why home incarceration still leaves the safety of the community "largely to the word of [the defendant] that [he] will obey the conditions").

Finally, the defendant is also a significant flight risk, especially in light of the nature of the charges against him and the penalties that the defendant faces after trial.  The defendant faces a 10-year mandatory minimum sentence after trial as a result of his participation in the narcotics conspiracy.[2]  And the evidence that the defendant faces at trial is overwhelming and corroborated

---

[2] Especially given the recently-obtained evidence from the defendant's cellphone, the Government also reserves the right to seek a superseding indictment against the defendant containing additional charges, including being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g); and using and carrying a firearm in furtherance of drug trafficking, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).  A violation of Section 924(c) carries a five-year mandatory minimum sentence that must be served consecutively to any other term of imprisonment imposed.

by a number of different sources, including intercepted phone calls in which the defendant is discussing narcotics transactions in Maryland in the Summer of 2014, the seizure of over three grams of crack cocaine from the defendant described above in August 2014, the defendant's post-arrest interview—in which he admitted to being a former BSGG member and previously possessing a gun in 2018—and testimony from a cooperating witness who will describe the defendant's participation in the November 2015 shooting. This evidence has been made even stronger in light of the digital evidence from the defendant's cellphone showing the defendant's possession of drugs, drug trafficking paraphernalia, and firearms. Given this combination of the potential penalties and the strength of the evidence, the defendant faces tremendous incentives to flee. *See United States v. Sabhani*, 493 F.3d 63, 76 (2d Cir. 2007) (observing that strong motives to flee exist where the evidence is strong and the potential penalties are severe). Additionally, the defendant's text messages prior to his arrest indicate that he intended to flee from law enforcement as long as possible and to find housing elsewhere ("Ima be on the run") ("I gotta lay low I'm lost bro") ("Ima come out there."). The defendant also admitted to Pretrial Services that he had been essentially homeless until the date of his arrest and had not been connected to any particular residence. All of these factors suggest that the defendant is likely to flee at some point in advance of trial, and law enforcement officers will have difficulties apprehending him when he does so.

In sum, the defendant poses a significant danger to the community and risk of flight that cannot be mitigated with any conditions of release—especially in light of the recent evidence that the Government has obtained and the statutory presumption in favor of detention that applies here.

\* \* \* \* \*

For the reasons set forth above, the Government respectfully submits that the Court should revoke the defendant's bail and enter an order of detention pending trial pursuant to the factors set forth in Title 18, United States Code, Section 3142(g).

> Respectfully submitted,
>
> GEOFFREY S. BERMAN
> United States Attorney
>
> By:    /s/ Andrew K. Chan
>         Andrew K. Chan / Danielle R. Sassoon
>         Brandon Harper / Jaclyn S. Wood (SAUSA)
>         Assistant United States Attorneys
>         Southern District of New York
>         (212) 637-1072 / 1115 / 2209

cc:    Counsel of record (by CM/ECF)